IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07cr159 |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| PATRICK LAAKE, | : | |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE AND STATEMENTS (DOC. #17)

---

On March 9, 2007, Special Agent Scott Warren ("Warren") of the Federal

Bureau of Investigation ("FBI") executed an Affidavit with which he was able to

obtain a search warrant from United States Magistrate Judge Michael Merz,

authorizing officers to search the residence of Defendant Patrick Laake

("Defendant" or "Laake"), located at 3319 E. Fifth Street, in Dayton.[1]  While the

Defendant's residence was being searched, Warren interviewed him, which

resulted in Laake making self-incriminatory statements, orally and in writing.  As a

result of the evidence obtained on that date, Defendant has been charged in the

Indictment (Doc. #4) with one count of possession of child pornography, in

---

[1]Warren's Affidavit, along with the Application for a Search Warrant, were
Government's Exhibit 1, during the oral and evidentiary hearing.

violation of 18 U.S.C. § 2252(a)(4)(B), and fifty-six counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  Believing that the evidence and statements were illegally obtained, Defendant has filed a Motion to Suppress Evidence and Statements (Doc. #17), wherein he argues that the Court should suppress the evidence seized when his residence was searched, because the search warrant authorizing that search was not supported by probable cause, and that the Court should suppress his statements, because he had not been given the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), before being questioned.  On January 17, 2008, this Court conducted an oral and evidentiary hearing on this motion.  The parties have filed their post-hearing memoranda (see Docs. ##26 and 27), and the Court now rules on same.

In his 19-page Affidavit,[2] Warren states that, on March 9, 2007, Officer Christoffers ("Christoffers") of the Dayton Police Department responded to a call received from Christopher Nelson ("Nelson"), who resided at 3321 E. Fifth Street. Nelson told Christoffers that, when he accessed software on his computer, he discovered a shared directory or folder entitled "Patrick Laake's Limeware."  Upon accessing that directory, Nelson found music and movies.  However, when he opened a file with a title consistent with a seven year-old girl having sex, he saw a young girl having sex with an older man.  In addition, Nelson saw two young boys having sex with each other, after he had opened a file with a title consistent with gay boys in underwear.  Christoffers viewed the two files and agreed with Nelson's description of them.  Nelson also informed the officer that he had not created, did

---

[2]The portion of the Affidavit setting forth the facts and circumstances involving the investigation of the Defendant, in particular, covers only about three pages.

not maintain and had not previously seen the shared directory entitled "Patrick Laake's Limeware."

On that same date, Warren, Special Agent Michael Wiggins ("Wiggins") of the FBI and Detective Douglas Roderick ("Roderick") of the Dayton Police Department traveled to Nelson's residence at 3321 E. Fifth Street, in order to assist in the investigation.  They learned that Nelson's home computer network consisted of two desktop computers, connected to a wireless router,[3] and a laptop computer, connected to a wireless connection broadcast by the wireless router. Warren examined Nelson's wireless router and observed that four devices were attached thereto, the three computers comprising Nelson's home computer network and a fourth, unknown computer ("intruding computer").  Warren also discovered that Nelson's wireless router was configured to allow unsecured access.  In other words, another computer with wireless capabilities could access Nelson's home network and utilize his Internet connection without his knowledge.

Warren also opened a software application on Nelson's computer, he saw the shared directory entitled "Patrick Laake's Limeware."  In addition to containing movie and music files, that folder listed file names that were consistent with child pornography.  One such file had a title indicating that a young girl, under the age of ten, was shown naked, while another indicated that a father was having sex with his two underage daughters.  Warren was not able to print either of those files, as they were located on the hard drive of the intruding computer, rather than upon Nelson's.  Therefore, any attempt to print them would have resulted in a

_____

[3]The wireless router carried the Netgear brand name.

modification of the data on the intruding computer.  Warren did, however, print the list of file names in that folder.  Attachment C to his Affidavit is that list.

Nelson told the law enforcement officers that Laake lived next door to him, at 3319 E. Fifth Street.  According to Warren, the proximity of that residence to Nelson's wireless router would have permitted an individual in that residence, using a computer with wireless capability, to utilize Nelson's home computer system to access the Internet.  Warren was able to confirm that the Defendant resided at 3319 E. Fifth Street, through an examination of public records.  Wiggins added further verification of that fact, by examining Montgomery County tax records to discover that Laake owned that property.

After Judge Merz had issued the search warrant for Defendant's residence,[4] Special Agents employed by the FBI and officers employed in the Dayton Police Department executed the search warrant at approximately 5:30, during the afternoon of March 9th.  Since Defendant was not at home, when the law enforcement officials arrived at his residence to execute the warrant, they had to brake the lock on the front door to that residence, in order to gain entry.  In addition, Warren called Defendant's place of employment, a Wal-mart store, and asked that Laake contact him or return to 3319 E. Fifth Street, because police officers were there.  Defendant returned there at about 6:15 p.m., accompanied by his girlfriend and her young daughter.

─────────────────

[4]The preceding statement of facts was taken exclusively from Warren's Affidavit, while the following is derived from his testimony at the oral and evidentiary hearing, where he was the only witness.

Warren and Special Agent Michael Wiggins ("Wiggins") met Laake when he arrived at 3319 E. Fifth Street.[5]  Laake entered his residence through the front door, past the broken lock on front door, and escorted by Warren.  Warren and Wiggins then "brought" Defendant into the kitchen of his residence and interviewed him, while all three sat at the kitchen table.[6]  Laake was "brought" into the kitchen with either Warren holding his arm or an officer on either side of him. While the interview occurred, an agent was stationed at the back door of Defendant's residence, which was located in the kitchen, in order to prevent people from entering or leaving.  The agents advised Laake that he was not under arrest.[7]  They did not provide him the Miranda warnings.  Warren and Wiggins interviewed Defendant for about one hour and fifteen minutes.  During the course of the interview, Laake was not threatened or otherwise coerced.  Moreover, Defendant was not handcuffed, during the entirety of his encounter with law enforcement on March 9th.  While Laake was being interrogated, other law enforcement officers continued to search the residence.  At the conclusion of the interview, Warren prepared a written statement which contained most of what Laake had told the agents during their questioning.  The Defendant signed the written statement, with which he incriminated himself.[8]

_____

[5]Warren actually met Laake, while he was in the process of walking from his car to the front door to his residence.

[6]Warren used the verb "brought" to describe what he and Wiggins did to the Defendant.  See Transcript of January 17, 2008 Oral and Evidentiary Hearing (Doc. #25) at 26.

[7]Indeed, no evidence was presented that Laake was arrested on March 9th.

[8]The written statement was Government's Exhibit 3, during the oral and evidentiary hearing.

As indicated, the Defendant has requested that the Court suppress the
evidence that was seized from his residence and his statements to Warren and
Wiggins.  As a means of analysis, the Court will initially address the parties'
arguments concerning the Defendant's request to suppress the evidence seized,
following which it will turn to their contentions pertaining to his statements.

I.  Evidence Seized from 3319 E. Fifth Street

As an initial matter, the Court will review the standards it must apply,
whenever it rules on a request to suppress the evidence, seized when a search
warrant was executed, on the theory that the warrant was not supported by
probable cause.  In United States v. Smith, 182 F.3d 473 (6th Cir. 1999), the Sixth
Circuit restated certain fundamental principles that a court must apply when a
defendant argues that evidence, seized upon the execution of a search warrant,
must be suppressed, because the supporting affidavit did not establish the
existence of probable cause:

> The Fourth Amendment, which states that "no Warrants shall issue, but
> upon probable cause, supported by Oath or affirmation," U.S. CONST.
> amend. IV, requires that probable cause be determined "by a neutral and
> detached magistrate instead of being judged by the officer engaged in the
> often competitive enterprise of ferreting out federal crime."  Johnson v.
> United States, 333 U.S. 10, 14 (1948).  In order for a magistrate to be able
> to perform his official function, the affidavit must contain adequate
> supporting facts about the underlying circumstances to show that probable
> cause exists for the issuance of the warrant.  Whiteley v. Warden, 401 U.S.
> 560, 564 (1971).  Probable cause is defined as "reasonable grounds for
> belief, supported by less than prima facie proof but more than mere
> suspicion."  United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).  It
> requires "only a probability or substantial chance of criminal activity, not an
> actual showing of such activity."  Illinois v. Gates, 462 U.S. 213, 244 n. 13
> (1983).  A warrant must be upheld as long as the magistrate had a
> "substantial basis for … conclud[ing] that a search would uncover evidence

of wrongdoing....”  Id. at 236.  See also United States v. Finch, 998 F.2d 349, 352 (6th Cir. 1993).

Id. at 476-77.  In Illinois v. Gates, 462 U.S. 213, 230 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances.  In Smith, the Sixth Circuit elaborated upon Gates:

> As the Supreme Court indicated in Gates, although “veracity,” “reliability,” and “basis of knowledge” are highly relevant in assessing the value of an informant's tip, these elements should not be understood as “entirely separate and independent requirements to be rigidly exacted in every case.”  462 U.S. at 230.  Instead, they should be understood as “closely intertwined issues that may usefully illuminate the commonsense, practical question” of whether an informant's tip establishes probable cause.  Id.  Therefore, under a “totality of the circumstances” approach, a deficiency in one of these areas “may be compensated for, in determining the overall reliability of [an informant's] tip, by a strong showing as to the other, or by some other indicia of reliability.”  Id. at 233.  The Court in Gates concluded that “the duty of a reviewing court is simply to ensure that the magistrate had a ‘substantial basis for … conclud[ing]’ that probable cause existed.”  Id. at 238-39.  The court must ensure that the magistrate was informed of some of the underlying circumstances from which the informant concluded evidence of a crime is where he claimed it would be found, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was reliable.  Aguilar [v. Texas, 378 U.S. 108, 114 (1964)].

182 F.3d at 477-78.  See also Gates, 462 U.S. at 238 (noting that “[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place”).  See also, United States v. Laughton, 409 F.3d 744, 747 (6th Cir. 2005).  When determining whether Warren’s affidavit established the existence of probable cause to believe that contraband or evidence of criminal

activity would be found at the place to be searched, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." United States v. Van Shutters, 163 F.3d 331, 336 (6th Cir. 1998), cert. denied, 526 U.S. 1077 (1999). Of course, this Court also must afford great deference to the determination of probable cause made by Judge Merz, who issued the search warrant. United States v. Allen, 211 F.3d 970 (6th Cir.) (en banc), cert. denied, 531 U.S. 907 (2000); United States v. Akram, 165 F.3d 452, 456 (6th Cir. 1999). See also, United States v. Graham, 275 F.3d 490, 501 (6th Cir. 2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrary).

Where, as in the present case, oral testimony was not presented to the magistrate who issued the warrant, the existence of probable cause to support that warrant must be ascertained exclusively from the four corners of the affidavit. See e.g., Whiteley v. Warden, 401 U.S. 560, 565 n. 8 (1971); United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999); United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999); United States v. Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996).

Herein, the Defendant argues in his motion that Warren's Affidavit failed to establish probable cause to believe that evidence of child pornography would be found in his (Defendant's) residence, because the information contained in that Affidavit was stale and, further, given that the information set forth therein is not specific enough to support a finding of probable cause. See Doc. #17. As a means of analysis, the Court will address those two arguments in the above order.

In <u>United States v. Spikes</u>, 158 F.3d 913 (6th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1086 (1999), the Sixth Circuit discussed the role of the staleness doctrine in assessing whether an affidavit supported the magistrate's finding of probable cause:

> As this court recognized in <u>United States v. Henson</u>, "[t]he function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." 848 F.2d 1374, 1382 (6th Cir. 1988). Rather, the question of staleness depends on the "inherent nature of the crime." <u>Id</u>. Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc. " <u>Andresen v. State</u>, 24 Md. App. 128, 331 A.2d 78, 106 (1975). As these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises. <u>See</u> <u>United States v. Greany</u>, 929 F.2d 523, 525 (9th Cir. 1991) (holding information not stale even though an informant said that two years ago he had remodeled defendant's premises to allow him to grow marijuana on second floor, with the court emphasizing that the information showed "an ongoing criminal business of a necessarily long-term nature"); <u>see also</u> <u>United States v. Johnson</u>, 461 F.2d 285, 287 (10th Cir. 1972) (stating the general principle that when "the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant").

<u>Id</u>. at 923-24. <u>See</u> <u>also</u> <u>United States v. Wright</u>, 343 F.3d 849, 864 (6th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 990 (2004).

Herein, Laake bases his assertion that the information set forth in Warren's affidavit was stale on the following:

> Here, the only fact used to provide probable cause was the alleged transmission of images believed to be child pornography that occurred one week before application for the warrant. Even if there was reason to believe

> images had been sent or received using [Defendant's] account in March[,]
> 2007, that does not support a finding that probable cause existed to search
> his residence.  The affidavit's information was simply too stale to allow a
> finding of probable cause, which means that the evidence obtained as a
> result of these warrants [sic] must be suppressed.

Doc. #17 at 4-5.  The Court rejects that argument, because Warren indicated in his
Affidavit that Christoffers had visited Nelson on March 9th, the same day that he
(Warren) had been to 3321 E. Fifth Street and had applied for and received the
search warrant for 3319 E. Fifth Street.  In will be remembered that, on that date,
Christoffers had viewed the same files as Nelson and had confirmed the latter's
description of the images viewed as being child pornography.  The Court also
rejects the Defendant's implicit contention that the date upon which he sent or
received child pornography is essential to a finding of probable cause.  The
application for the search warrant requested authority to search Defendant's
residence for evidence of possession of child pornography, in violation of 18
U.S.C. § 2252(a)(4)(B).  Therefore, the pertinent issue before the Court is whether
Warren's Affidavit established probable cause to believe that evidence of the
possession of child pornography would be found in that residence, not whether
Defendant had sent or received same.  Thus, the fact that Warren's Affidavit did
not state that Laake sent or received child pornography is not fatal to the
Government.

However, even assuming the information set forth in Warren's Affidavit,
concerning child pornography being in Defendant's residence, was one week old,
applying the four factors set forth in Spikes would cause this Court to reject the
assertion that this rendered the information in that Affidavit stale.  The character of
the alleged crime, possession of child pornography, is not akin to a chance

- **10** -

encounter in the night.  Therefore, this factor does not support a finding of staleness.  The second and fourth factors also fail to support the proposition that the information set forth in Warren's affidavit is stale, since Defendant was not a nomadic individual and law enforcement sought to search his residence, i.e., his "operational base" where he was entrenched.  Lastly, Warren indicated in his Affidavit that individuals who collect child pornography rarely dispose of their collections.  Consequently, this Court concludes that the third factor strongly supports a finding that the information therein was not stale, since it had enduring value to the Defendant.  Thus, the Sixth Circuit has held that statements in an affidavit by an officer that individuals possessing child pornography are likely to retain those materials, supports a finding that the affidavit does not contain stale information.  United States v. Noda, 2005 WL 1506605 (6th Cir. 2005).  See also United States v. Lawson, 999 F.2d 985, 987 (6th Cir. 1993) (noting that "[a] judicial officer may give considerable weight to 'the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found'") (quoting United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987)).

Accordingly, the Court rejects the Defendant's argument that the evidence seized from his residence must be suppressed, because Warren's Affidavit contained stale information.

This Court also rejects the Defendant's argument that the Affidavit failed to establish probable cause to believe that evidence of child pornography would be found in his residence.  That document established that the two files in the folder on Nelson's computer entitled "Patrick Laake's Limeware" were child pornography and that other such files had titles that were consistent with their containing such.

Thus, the question becomes whether Warren's Affidavit established probable cause to believe the images in that folder originated from a computer in Laake's residence.

Therein, Warren indicated that Nelson's wireless router was configured in a manner to allow other computers to gain unsecured access to his computer network and that a fourth, unidentified computer, in addition to Nelson's three computers on that network, was accessing that network. Warren also established in his Affidavit that Laake lived next door to Nelson and that, due to the proximity of the two houses, an individual in the Defendant's residence could have accessed his neighbor's computer system. Moreover, Nelson, who had called police to report the child pornography he had seen, indicated that he was not responsible for the shared directory entitled "Patrick Laake's Limeware." Simply stated, that information is sufficient to establish "a fair probability" (Gates, 462 U.S. at 238) that the images on the files in that folder, seen by Nelson and Christoffers, had originated from a computer in the Defendant's residence. Therefore, the Affidavit established probable cause to believe that evidence of the possession of child pornography would be found therein.

Accordingly, the Court overrules the Defendant's Motion to Suppress Evidence and Statements (Doc. #17), as it relates to the evidence that was seized when the search warrant was executed at 3319 E. Fifth Street.

II.  Suppression of Statements

In addition, the Defendant argues that this Court must suppress the statements that he made on March 9th, because he was not given the warnings

required by Miranda v. Arizona, 384 U.S. 436 (1966), before being questioned.  It is axiomatic that a suspect need only be given those warnings, before being subjected to a custodial interrogation, an interrogation described as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Thompson v. Keohane, 516 U.S. 99, 107 (1995) (internal quotation marks and citation omitted). Herein, it is not disputed that Laake made his statements to Warren and Wiggins in response to their questioning.  Therefore, the Court turns to the issue of whether Laake was in custody when that questioning occurred.

In determining whether an individual was in custody for purposes of Miranda warnings, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). See also, Stansbury v. California, 511 U.S. 318, 322 (1994) (duty to give Miranda warnings is triggered "only where there has been such a restriction on a person's freedom as to render him in custody") (internal quotation marks and citation omitted).  As the United States Supreme Court has instructed, "the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation." Berkemer v. McCarty, 468 U.S. 420 (1984).

In United States v. Mahan, 190 F.3d 416 (6th Cir. 1999), the Sixth Circuit restated familiar principles that must be applied to ascertain whether an individual was in custody when interrogated:

> For an individual to be "in custody," there must be "a formal arrest or restraint on freedom of movement of the degree associated with [a] formal arrest." Thompson [v. Keohane, 516 U.S. 99, 112 (1995)] (citation and internal quotation omitted). In determining whether a suspect is "in custody" for purposes of applying the Miranda doctrine, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). See also Thompson, 516 U.S. at 112 (stating that the custody determination hinges upon whether, "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave").

Id. at 421. In United States v. Salvo, 133 F.3d 943, 948 (6th Cir.), cert. denied, 118 S.Ct. 1805 (1998), the Sixth Circuit explained:

> The Supreme Court has distinguished between "custodial interrogation" and the mere questioning of a suspect in a "coercive environment":
>> [A] noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question.
> [Oregon v. Mathiason, 429 U.S. 492, 495 (1977)]. See also, United States v. Phillip, 948 F.2d 241, 247 (6th Cir. 1991), cert. denied, 504 U.S. 930 (1992) ("Coercive environments not rising to the level of formal arrest … do not constitute custody within the meaning of Miranda."); United States v. Knox, 839 F.2d 285, 291-292 (6th Cir. 1988), cert. denied, 490 U.S. 1019 (1989).

Id. at 948. In United States v. Crossley, 224 F.3d 847 (6th Cir. 2000), the Sixth Circuit set forth the factors to consider when deciding whether a suspect was in custody when questioned:

> "(1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or

- **14** -

> to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions."

Id. at 861 (quoting Salvo, 133 F.3d at 950).  In United States v. Ozuna, 170 F.3d 654 (6th Cir. 1999), the Sixth Circuit stressed that, since an objective standard must be applied to ascertain whether the defendant was in custody, the subjective beliefs of the defendant and/or the interrogating officer are not dispositive.  Id. at 658.

In United States v. Lawrence, 1989 WL 153161 (6th Cir. 1989), cert. denied, 494 U.S. 1019 (1990), the Sixth Circuit held that when a defendant seeks to suppress his statements on the basis that he was not given Miranda warnings, he has the burden of proving by the preponderance of the evidence that he was entitled to those warnings, because he was subjected to a custodial interrogation. Accord, United States v. Davis, 792 F.2d 1299, 1309 (5th Cir.), cert. denied, 479 U.S. 964 (1986); United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984).

Herein, this Court concludes that the Defendant has failed to meet his obligation of proving by the preponderance of the evidence that he was in custody when questioned by Warren and Wiggins.  First and foremost, the Defendant was interrogated at the kitchen table in his own residence, after he had been told that he was not under arrest, which cannot be said to have been a hostile or coercive environment.  See United States v. Howard, 991 F.2d 195, 200 (5th Cir.) (concluding that the defendant was not custody when questioning occurred at his home and he was told he was not under arrest, although told to "stay put"), cert. denied, 510 U.S. 949 (1993).  Moreover, Laake was not handcuffed during the

questioning, nor is there evidence that he was otherwise restrained.[9]  Indeed, there

is no evidence that Laake was arrested on March 9th.  Some circumstances

surrounding the interrogation of the Defendant, however, would support the

conclusion that he was in custody at that time.  For instance the interrogation

lasted about an hour and fifteen minutes.[10]  Nevertheless, given that the Defendant

was questioned, while seated at a table in his kitchen, and after he had been told

he was not under arrest, the Court concludes that the Defendant was not in

custody during his interrogation and that, therefore, Miranda warnings were not

necessary before that interrogation could take place.

Accordingly, the Court overrules the Defendant's Motion to Suppress

Evidence and Statements (Doc. #17), as it relates to his statements.

---

[9]The Government states in its post-hearing memorandum that the Defendant was
told that he was free to go, before the questioning began.  See Doc. #27 at 9.
However, Warren did not testify that he told Laake that he was free to go at any
time.  See Doc. #25 at 26.  Rather, the agent responded affirmatively to the
question of whether Defendant was free to go at any time.  Id.  Warren was not
asked whether he had conveyed that information to Laake.  Therefore, the Court
concludes that Warren testified about his subjective belief that the Defendant was
free to leave at any time, which is not dispositive.  Ozuna, 170 F.3d at 658.

[10]In addition, one could argue that a further factor, in support of the proposition
that the Defendant was in custody during his interrogation, is that he was
effectively detained throughout.  Some evidence would support that argument.  For
instance, Warren and Wiggins "brought" Laake into the kitchen of his residence
from the front of his house, and another officer stood at the back door to the
Defendant's residence, during the interrogation.  However, since the Supreme
Court held that the detention of a person during a search is "substantially less
intrusive than an arrest" (Michigan v. Summers, 452 U.S. 692, 702 (1981)),
courts have held that a person detained during the execution of a search warrant is
not, as a result, in custody.  United States v. Burns, 37 F.3d 276, 281 (7th Cir.
1994), cert. denied, 515 U.S. 1149 (1995); Howard, 991 F.2d 200 ; United
States v. Jones, 933 F.2d 807, 810 (10th Cir. 1991).  Therefore, even if the
Defendant were detained during the execution of the search warrant, this Court
would not, as a result, conclude that he was in custody.

Based upon the foregoing, the Court overrules Defendant's Motion to Suppress Evidence and Statements (Doc. #17), in its entirety.


April 15, 2008


/s/ Walter Herbert Rice
_____
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record.